IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                          CIV 10-1192 WJ/KBM
                                              CR   07-0545 WJ

MAX MENRIQUEZ FLORES,

    Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

    A federal grand jury indicted Max Menriquez Flores on four drug- and firearm-related offenses, and a petit jury convicted him on all counts. He is serving a fifteen-year term of imprisonment. This matter is before the Court on his *pro se* motion seeking habeas relief under 28 U.S.C. § 2255, where he raises four separately-numbered and interrelated claims. *See Doc. 1.*[1] The parties' arguments and the entire record have been given careful consideration. Although some of the Petitioner's claims are vague and conclusory, the basis for them is evident from that review of the record.

    The issues are straightforward, and I generally agree that the petition should be dismissed

---

[1] Unless otherwise noted, citations to "Doc." are the documents filed in this civil action. Although the federal form for initiating a § 2255 action is captioned "motion," as is the common practice both in this Court and the Tenth Circuit, I refer to the document as a "petition." *See e.g., United States v. Shipp*, 589 F.3d 1084, 1086 (10th Cir. 2009) ("appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition"); *United States v. Jose Garcia-Cardenas*, CIV 08-0382 LH/KBM (Doc. 7 at 2) ("Defendant raises three claims in his § 2255 petition").

for the reasons set forth in the United States' response.  *See Doc. 7.*  As such, I incorporate those authorities and arguments herein by reference.  Accordingly, I confine my remarks to supplemental background facts and reasoning, but will discuss the claims in a different order than the parties have presented them.  Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that the Petitioner is not entitled to relief, I find that an evidentiary hearing is not necessary.[2]

## Background Re:  Attorneys And Post-Trial Proceedings

It is first necessary to distinguish the four attorneys who represented Petitioner:  trial counsel Mario Esparza; sentencing and post-trial counsel Robert Ramos and Cesar Pierce-Varela; and appellate counsel Leon Schydlower.  *See United States v. Flores,* CR 07-0545 WJ (Docs. 7, 14-15, 56-57, 96, 98) (counsel appointments and substitutions); *id.* (Doc. 60 at 1) (hereinafter "*Motion To Suppress Hearing*"); *id.* (Doc. 80 at 1) (hereinafter "*Voir Dire Transcript*"); *id.* (Docs. 66 and 67 at 1) (hereinafter collectively referred to as "*Trial Transcript*"); *id.* (Doc. 108 at 1) (hereinafter "*First Sentencing Hearing*"); *id.* (Doc. 111 at 1) (hereinafter *"Second Sentencing Hearing"*); *id.* (Doc. 110 at 1) (hereinafter "*New Trial Hearing*").

---

[2] *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); Rule 8(a), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."); *see also e.g. United States v. Fernandez,* 2010 WL 3422586 at *9 (10th Cir.) (A court need not hold an evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' . . . The court reviewed the motion and files and records of the case and determined no evidentiary hearing was required.  We see no abuse of discretion.") (citing § 2255 and *United States v. Lopez,* 100 F.3d 113, 119 (10th Cir. 1996)), *cert. denied,* 2010 WL 4393084 (12/6/10).

Post-conviction counsel filed a belated motion for new trial citing allegations of juror and witness misconduct. These incidents were purportedly "newly discovered" and supported by the affidavits from Petitioner's two sisters and his former girlfriend and then-wife. One of the affidavits concerning the prospective jurors directly questioned the effectiveness of trial counsel. The affidavits were not made available to the Tenth Circuit on direct appeal, but were part of the record in proceedings before District Judge William Johnson. Petitioner also submitted the same affidavits with his § 2255 petition in connection with one of his ineffective assistance of counsel claims. *See, e.g., id.* (Doc. 74 at 1-2); *id.* (Doc. 74-1 at 2, 3, 5); *New Trial Hearing* at 3-5; *Doc. 1* at 8, 10, 12; *United States v. Flores,* 341 Fed. App'x 386, 392-93 & n.3 (10th Cir. 2009), *cert. denied,* 130 S. Ct. 1096 (2010). Although there was some discussion about the ineffectiveness issue in the motion for a new trial and on direct appeal, the merits of the issue were expressly left to these habeas proceedings.[3]

## Ground 2 – Consecutive Sentence

Petitioner's sentence runs concurrently for three of his counts of conviction. However, his sixty-month sentence of imprisonment for "Carrying a Firearm During and In Relation to a Drug

---

[3] Both the United States and Judge Johnson construed the motion for a new trial as attempting to raise an ineffective assistance of trial counsel claim, which Judge Johnson noted are to be brought in habeas proceedings. The Tenth Circuit agreed and declined to discuss the merits of Mr. Schydlower's argument on appeal that trial counsel's "excusable neglect" in failing to raise the issues during trial warranted finding post-trial counsel's motion for a new trial timely. *See United States v. Flores,* CR 07-545 WJ (Doc. 76 at 3 – United States' response that "really that defense counsel was ineffective for failing to heed Defendant's family members' complaints that the jury panel was tainted and that the rule of witness sequestration had been violated."); *New Trial Hearing* at 7 (Judge Johnson's ruling that "I view the motion in reality as is a motion for new trial based on ineffective assistance of counsel. Tenth Circuit law is clear that ineffective-assistance-of-counsel claims must be brought in collateral proceedings under 28 U.S.C. 2255 under a habeas corpus proceeding."); *Flores,* 341 Fed. App'x at 393-94 (concluding that "assuming for purpose of argument that the statements in the affidavits are true," Mr. Schydlower's arguments "suggest a possible claim of ineffective assistance of counsel and that there are no special circumstances present here that would make it prudent to disregard our usual rule that such issues should be raised in collateral proceedings.").

Trafficking Crime" in violation of 18 U.S.C. § 924(c)(1)(A)(I) runs consecutively to the sentence on the other counts. Judge Johnson imposed it consecutively because "under the law, established by Congress that sentence must be consecutive to any term of imprisonment imposed." *Second Sentencing Hearing* at 6. Petitioner challenges that decision.

Without citing a specific case, Petitioner asserts that "case law has recently held that a sentence under [924(c)(1)] does <u>NOT</u> have to be a 'consecutive' sentence" and that "due process requires the sentencing court to be aware of all discretionary sentencing alternatives" and that Judge Johnson "was not aware of the scope of [his] sentencing discretion" to impose a concurrent 924(c) sentence. *Doc. 1* at 4 (emphasis original). The United States argues that the 924(c) statute "by its clear terms, requires the imposition of a consecutive sentence for the use of a firearm during the commission of a drug trafficking crime," and it cites a Third Circuit case for the proposition that the statute mandates a consecutive sentence only. *Doc. 7* at 14 (citing *Abbott v. United States,* 574 F.3d 203, 206 (3rd Cir. 2009)).

My best guess is that both litigants are referring to the Supreme Court's unanimous decision in *Abbott,* which affirmed the Third Circuit decision cited by the United States and was issued about a month before Petitioner filed this action. *See Abbott v. United States,* ___ U.S. ___, 131 S. Ct. 18 (2010) (decided 11/15/10 and petition file-stamped 12/13/10). Petitioner either misreads *Abbott* or, if he has another decision in mind, *Abbott* forecloses reliance on it.

In *Abbott,* the Court upheld the majority view in the circuits that 924(c) imposes a mandatory consecutive sentence for possessing a firearm in furtherance of a drug trafficking crime or crime of violence.[4] The Tenth Circuit was among them. *E.g., United States v.*

---

[4] *Abbott,* 131 S. Ct. at 23 ("We hold, in accord with the courts below, and in line with the majority of the Courts of Appeals, that a defendant is subject to a mandatory, consecutive sentence for a

*Nicholson,* 272 Fed. App'x 732, 736 (10th Cir. 2008) ("carrying a firearm in relation to a drug trafficking crime . . . carries a mandatory consecutive sentence of at least five years.").

Petitioner may be confused by the Supreme Court's discussion regarding § 924(c) imposition of an additional consecutive sentence of either five, seven, or ten years, depending whether the gun is simply possessed or brandished or discharged respectively. *Id.* at 25. It held that courts cannot "stack" these penalties and impose an additional consecutive sentence of twenty-two years if a defendant does all three – that is, possess, brandish, and discharge a weapon during the course of a drug trafficking crime or crime of violence. *Id.* at 23 ("a § 924(c) offender is not subject to stacked sentences for violating § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22."). Because there is no question that 924(c) requires Petitioner's carrying a firearm sentence to run consecutively, Judge Johnson had no choice but to impose it as such, and this claim is utterly without merit.

## **Ground 4 – Fourth Amendment Claims**

Before his arrest for driving on a suspended license, officers received complaints of activity consistent with drug dealing from a home where Petitioner, his brother and father resided. They set up surveillance on the home and a truck Petitioner was known to drive. They could not see everything inside the cab because of its tinted windows, but the officers observed the truck driving away from the residence and pulling into a grocery store parking lot. Some of the officers saw Petitioner and his then-girlfriend exit the vehicle. When Petitioner returned to

---

§ 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."); *id.* at 26 (noting that 1998 amendments did not change "the bar on concurrent sentences" and that § 924(c)(1)(D)(ii) provides "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.").

the truck, the officers approached and told him to step to the rear.  In response, Petitioner put his groceries into the cab of the truck and then tossed his keys onto the driver's seat and locked the vehicle as he shut the driver-side door.  Following a canine alert on the vehicle, the officers obtained a warrant and then searched the truck finding a weapon, ammunition, cocaine, methamphetamine, three sets of scales and baggies.  None of the items would later be found to contain Petitioner's fingerprints.  *See, e.g., Flores,* 341 Fed. App'x at 389; *Trial Transcript* at 24-181.

Petitioner's argues that an officer cannot "stop a vehicle for a driver license violation" unless he "personally observe[s] a violation," and that an officer who stops a vehicle for that reason "because he was told to do so [b]y another officer is not constitutionally reasonable." *Doc. 1* at 4.  He maintains that if the search and seizure was unconstitutional, his conviction based on the evidence obtained as a result of the stop cannot stand.

Fourth Amendment claims are not cognizable in habeas under *Stone v. Powell*, however, if the defense had a full and fair opportunity to litigate the issue at trial and on appeal.  *See e.g., Doc. 7* at 14-15; *United States v. Wilson*, 2002 WL 244838 at *1 (10th Cir. 2002) (citing *Stone v. Powell*, 428 U.S. 465 (1976) and *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993)). Petitioner's trial attorney raised the suppression issue before trial and had an evidentiary hearing before Judge Johnson.  *See, e.g., Motion To Suppress Hearing* at 2-3, 6-8.  Indeed, Mr. Esparza argued precisely the same rationale Petitioner raises here – that the evidence should be suppressed because the officers who stopped and arrested Petitioner for driving under a suspended license did not actually see him operating the vehicle.  *Id.* at 105-06; *United States v. Flores*, CR 07-545 WJ (*Doc. 37* at 4-5).

Although Petitioner's appellate attorney raised "three issues on direct appeal," he did not

reassert "the alleged Fourth Amendment violation." *Doc. 7* at 14. It is well-settled that ineffective assistance of counsel is an exception to the *Stone* rule. *E.g., Kimmelman v. Morrison*, 477 U.S. 365, 379, 382-83 (1986); *United States v. Owens*, 882 F.2d 1493, 1498 & n.5 (10th Cir. 1989). Ineffectiveness of appellate counsel can also excuse a failure to raise issues on direct appeal. *See, e.g., United States v. Cox*, 83 F.3d 336, 341 (10th Cir.1996) ("A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal."); *United States v. Real-Ordones*, 43 Fed. App'x 229, 231 (10th Cir. 2002) (noting ineffective assistance of counsel can excuse procedural default of failing to raise Fourth Amendment issue on direct appeal and remanding where district court did not address one aspect of the Fourth Amendment claim).

In the spirit of construing *pro se* petitions liberally, and for the sake of completeness, I will assume that Petitioner's vague and conclusory third claim of "cumulative error by counsel," *Doc. 1* at 4, contemplates an ineffective assistance of appellate counsel claim for Mr. Schydlower's failure to pursue the Fourth Amendment claim on appeal. *E.g., United States v. Galvan*, 2011 WL 304792 at *1 (10th Cir. 2/1/11) (2255 proceeding; "we construe Galvan's filings liberally because she is proceeding *pro se*") (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)). Even so, to prevail, Petitioner bears the burden to show that the Fourth Amendment claim is "meritorious." *E.g., United States v. Herron*, 371 Fed. App'x 913, 917 (10th Cir. 2010) ("Appellate counsel cannot be constitutionally deficient for failing to raise an issue on direct appeal if the omitted issue was without merit.") (citing *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999)), *cert. denied*, 2011 WL 55695 (1/10/11).

Judge Johnson denied the motion to suppress, finding no basis in fact or law for the very argument Petitioner raises. He announced his findings on the record as follows:

> Considering the testimony of [Officer] Gomez, [Officer] Watkins, [Officer] Villegas, and [Officer] Flores, I've resolved the credibility issue in favor of the government and find that the defendant was operating the 1999 Dodge pickup truck on May the 16th, 2006, when his license had been suspended or revoked.
>
> * * * * *
>
> In this instant case, the arresting officers were authorized by New Mexico state law to effect an arrest on the defendant. The officers reported seeing the defendant driving, and they knew he was in violation of state statute. In addition, the officers were aware before the arrest that there was an arrest clause for the specific – for the violation of driving on a suspended or revoked license. Therefore, the officers had probable cause to arrest the defendant for driving on a revoked or suspended license.
>
> After the defendant was taken into custody, the officers called for a – a K-9 to perform a sniff. The dog alerted to the presence of narcotics around the pickup truck. The officers then proceeded to obtain a search warrant, and once the search warrant was issued by a state district judge, then the vehicle was searched. I will find that the officers were in compliance with the law and the Constitution, and therefore, the defendant's rights were not violated, and the Motion to Suppress will be denied for the reasons stated on the record.

*Motion To Suppress Hearing* at 111-12. For these same reasons, Petitioner cannot establish that his Fourth Amendment claim is meritorious, much less that Mr. Schydlower's failure to raise it constitutes "deficient conduct" or that the outcome of the appeal would have been different had the claim been raised there. *E.g., Kimmelman*, 477 U.S. at 375; *United States v. Dowell*, 388 Fed. App'x 781, 784 (10th Cir. 2010) (citing *Kimmelman* and *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995)).

## Ground 1 – Ineffective Assistance Of Counsel Based On The Affidavits

Petitioner seeks to again raise an ineffectiveness claim argued by both post-trial and appellate counsel – that trial counsel was ineffective when he "failed to move for mistrial based on the jury and witness misconduct." *Doc. 1* at 4.

### A. *Strickland Standard*

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), Petitioner must establish two things – that counsel's conduct was constitutionally deficient and that, but for the conduct, the result of the proceeding would have been different. *E.g., Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Burghuis v. Thomkins*, ___ U.S. ___, 130 S. Ct. 2250, 2264 (2010); *Strickland*, 466 U.S. at 687. Failure to make either showing defeats the claim. *E.g., Smith v. Robbins*, 528 U.S. 259, 286, n.14 (2000); *Strickland*, 466 U.S. 687.

The *Strickland* standards set a "high bar" for petitioners to surmount, and the habeas court's review, "[e]ven if *de novo* . . . is a most deferential one." *Harrington*, 131 S. Ct. at 788. "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 787 (internal quotations and citations omitted). That conduct must amount to "errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* The question is not whether counsel's conduct "deviated from best practices or most common custom," but whether "an attorney's representation amounted to incompetence under prevailing professional norms." *Id.* at 788. In considering the first *Strickland* prong, this Court must not succumb to the temptation to "secondguess counsel's assistance after conviction or adverse sentence." *Id.*

To establish prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id.* at 787. "It is not enough to show that the errors had some conceivable effect on

the outcome of the proceeding." *Id.* Instead, "[c]ounsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 787-88.

## B. Witness Violation Of Sequestration Order

The Federal Rules of Evidence permit courts to "order witnesses [be] excluded so that they cannot hear the testimony of other witnesses." Fed. R. Evid. 615. At the outset of trial, Judge Johnson noted for the jurors that the witness sequestration rule had been invoked.[5] In the Tenth Circuit, the "Rule" not only prohibits witnesses from hearing the live testimony of other witnesses, it also prohibits witnesses from discussing their testimony with other witnesses.[6] Petitioner's wife avers that she overheard the government's first officer witness talking with the other officers in the hallway after he had testified. Her affidavit provides in pertinent part:

> I and other persons were in the hallway outside the courtroom during the testimony of the first witness, Silver City Police Officer Ben Villegas. A group of officers were waiting out in the hallway as well waiting to testify for the government following his testimony.
> At the conclusion of his testimony, we exited out of the courtroom and immediately walked over to the group of officers waiting to testify and we overheard him telling them what question he was asked and what testimony he gave for response. Thereafter the other officers were called to testify, one by one.

---

[5] *See Trial Transcript* at 11 ("And one of the things, too, members of the jury, individuals who are witnesses are not allowed to be in the courtroom until they complete their testimony, so they have to remain outside. Oftentimes, people show up to testify, and they don't always realize that. . . . and I'll just ask counsel to keep and idea (sic) [eye out] in case any of the witness accidentally come into the courtroom before they testify.").

[6] *United States v. Samuels*, 493 F.3d 1187, 1190 (10th Cir.) ("This rule requires not only that prospective witnesses be excluded from the courtroom, but also that they be prohibited from discussing the case with other witnesses. . . .  At the suppression hearing, Gatwood violated the sequestration order by talking with McFadden, who had not yet testified.") (internal quotations and citation omitted), *cert. denied*, 552 U.S. 1081 (2007); *United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986) ("Our decisions have made clear that 'a circumvention of the rule does occur where witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify.'") (quoting *United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir.), *cert. denied*, 439 U.S. 931  (1978)), *cert. denied*, 480 U.S. 908 (1987).

*Doc. 1* at 12.

Petitioner simply asserts that Mr. Esparza "should have moved for a mistrial." *Doc. 1* at 4. The United States argues that a mistrial would not have been an option, such that counsel's failure to raise the officer's alleged sequestration violation "cannot be considered ineffective." *Doc. 7* at 13; *see also id.* at 12.  In support, it relies on the Sixth Circuit decision in *United States v. Solorio*, 337 F.3d 580, 593 (6th Cir.), *cert. denied*, 540 U.S. 1063 (2003).

I do not read the *Solorio* decision as broadly as the United States.  The quote in *Solorio* from the centuries-old *Holder* decision indeed does not specifically mention mistrial as a possible sanction for violation of the witness sequestration rule.  But, *Solorio* also cites more recent and recognized persuasive authority that declaring a mistrial is one of the options available to a judge where the witness sequestration rule is violated.[7]  A number of cases deal with mistrial as a sanction for violation of the rule, *see, e.g., infra* note 9, including the Tenth Circuit, *see supra* note 8, and I have found no controlling authority in the Supreme Court or Tenth Circuit holding directly to the contrary.

Regardless, the *Solorio* decision underscores what is conclusive of the claim here.  A trial judge's discretion encompasses deciding which, if any, sanction to impose for a violation of the sequestration rule.  And, in order to receive one of the more "drastic" remedies for violation of

---

[7]   *See Solorio*, 337 F.3d at 587 (quoting *Holder v. United States*, 150 U.S. 91 (1893) and citing *Charles Alan Wright & Victor James Gold*, 29 FEDERAL PRACTICE & PROCEDURE § 6246, at 93-95 (1997) where it explains "that the district judge has many options when faced with a violation of Rule 615, including holding the witness in contempt, holding the counsel who is responsible for the violation in contempt, allowing the witness to be cross-examined, explaining the significance of the violation to the jury, ***declaring a mistrial,*** striking the witness's testimony in part, and disqualifying the witness from testifying entirely") (emphasis added); *see also, e.g., United States v. Poe*, 713 F.2d 579, 581 (10th Cir. 1983) ("***The basis for the mistrial order*** was the district court's finding that there had been '***repeated violations***' by government witnesses of the court's sequestration order entered before trial, pursuant to the provisions of Fed. R. Evid. 615.") (emphasis added), *cert. denied*, 466 U.S. 936 (1984).

the Rule (such as mistrial or disqualification of the witness or a new trial), a court must be shown something that is similar, if not identical, to the *Strickland* prejudice prong.[8]  Neither the affidavit nor Petitioner elaborate on the officers' conversation or its effect on the trial.  Neither suggest, much less establish, how trial counsel's failure to raise the officers' alleged discussion was at all prejudicial.  That was one of the deficiencies Judge Johnson noted in denying the motion for a new trial.  *See New Trial Hearing* at 7 ("And the motion for new trial . . . does not – nothing shows how, even if this occurred, how there was any prejudice to defendant . . . the motion does not give any guidance in assessing the potential or actual prejudice to the defendant").  This utter lack of a showing of prejudice is dispositive of the *Strickland* claim.[9]

---

[8]  *E.g., Solorio*, 337 F.3d at 593-94 ("Exclusion is considered a very severe remedy. . . . Moreover, in order for a party to receive a new trial based on a district court's failure to exclude testimony, we have also held that the party must show that the error prejudiced its right to a fair trial.") (citing *United States v. Rugiero*, 20 F.3d 1387, 1394 (6th Cir.), *cert. denied,* 459 U.S. 972 (1982), which held it was "not an abuse of discretion for a district court to permit a witness's testimony even after the witness had violated the sequestration order with the knowledge of the witness's party because the error was not prejudicial); *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) ("The district court's denial of a mistrial for violation of the sequestration rule is likewise a matter of discretion, and reversible only on a showing of prejudice."); *Ives v. Boone*, 101 Fed. App'x 274, 282 (10th Cir. 2004) ("When a witness violates a sequestration order, it is within the trial court's discretion to admit or exclude that witness' testimony. . . . The witness should generally not be disqualified unless allowing the testimony would result in 'probable prejudice.'") (citing *United States v. McVeigh*, 106 F.3d 325, 330 n.3 (10th Cir. 1997) and quoting *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 980 & n.2 (10th Cir. 1996), *cert. denied*, 519 U.S. 931 (1996), which in turn cites *Holder*, 150 U.S. at 92), *cert. denied,* 543 U.S. 1001, 1026 (2004); *United States v. Jones*, 48 Fed. App'x 835, 836 (3rd Cir. 2002) ("The court may remedy a violation by holding the witness in contempt, . . . by commenting to the jury on the violation and its effect on the weight and credibility of the evidence, . . . or by allowing opposing counsel to cross-examine the witnesses concerning the violation. . . .  Only if the defendant has suffered actual prejudice as a result of the violation will a court consider excluding the witness' testimony. . . .  Similarly, in order for a court to invoke the extreme remedy of declaring a mistrial, the violation must have prejudiced the defendant.") (internal citations omitted), *cert. denied*, 537 U.S. 1178 (2003).

[9]  *C.f., United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986) ("In this circuit, the defendant must make a showing of probable prejudice or an abuse of discretion as a predicate to reversal based on a trial court's disregard of Rule 615. . .  Here no such showing was made, for the defendants have done nothing more than speculate about the possibility of conversations between the witnesses. . . .  Such conjecture does not provide this court with any meaningful guidance in assessing the potential for actual prejudice to the defendants or of an abuse of discretion, and we will not reverse since no such

The evidence received at trial established that Petitioner, his brother, and his father lived in the residence under surveillance.  The defense sought to show that:  the firearm, ammunition and truck did not in fact belong to Petitioner; Petitioner's brother had been stopped by police that very evening and found in possession of drugs and a scale like the one later found in the truck; Petitioner's father stowed his weaponry in the truck because Petitioner's brother was on probation and could not live in a house where firearms were located; and no physical evidence tied Petitioner to anything seized from the truck.  Because most of the testimony supporting this theory was introduced through the *officers'* testimony, it would have made no sense for trial counsel to try and exclude this evidence.  Moreover, all of the officers had previously testified at the suppression hearing where it was subject to cross-examination by trial counsel, and the offices' testimony at that hearing and at trial did not vary in any significant respect.  *Compare Motion To Suppress Hearing* at 10-84, *with Trial Transcript* at 24-151.  Thus, there is also no basis to conclude, that the trial proceedings were rendered "unfair" under *Strickland*'s prejudice prong by any unchallenged violation of the sequestration rule.[10]  Accordingly, I find the witness sequestration rule violation claim both unsupported and without merit.

### C.  Potential Juror's Expression Of Bias

Petitioner points to his sisters' affidavits as support for his argument that the venire panel

---

showing was made."), *cert. denied*, 480 U.S. 908 (1987).

[10] *C.f., United States v. Womack*, 654 F.2d 1034, 1040-41 (5th Cir. 1981) ("We conclude that Womack was not so prejudiced by the alleged violation of Rule 615 that a new trial is required. . . .  The prosecution witnesses' testimony at trial was uncontradicted, corroborated by other evidence, and consistent with prior statements of those witnesses.  Those witnesses stated in their post-trial affidavits that their trial testimony was truthful.  Moreover, the trial judge, in denying Womack's motion for a new trial, rejected his assertion that the demeanors of the government's witnesses were affected by their discussion of the case in the witness room."), *cert. denied*, 454 U.S. 1156 (1982).

was "irreversibly tainted" by the "prejudicial statements" made by "potential jurors . . . at the time of voir dire." *Doc. 1* at 4 (original emphasis deleted). He claims that Mr. Esparza "should have moved for . . . a change of the venire panel." *Id.* The more detailed of the two affidavits provides in pertinent part:

> during jury selection . . . I and other people were in the hallway outside the courtroom door when we overheard various discussions among jurors as they emerged from the courtroom. One of the ladies said she was a guard at the Hobbs Detention Center. Some of the comments were, that in her eyes [Petitioner] was guilty and by being there it was just a waste of her time. During the time when these jurors were carrying on Mario Esparza . . . came out of the courtroom for a break, I confronted him and told him that the jurors were discussing my brother and tell[ing] each other that they were going to find him guilty and they were laughing and carrying on. Mr. Esparza looked at me and said "Don't start your shit Rhonda I'll take care of it.["] . . . After the jury was selected [and] the jurors started coming out of the building, that same lady that was talking upstairs approached me and said, "I forgot to have my work excuse signed, do you know where I have it signed.?" I told her, " . . . the person you were talking about up there is my brother. . . . you were going to convict my brother without even hearing his case ."

*Doc. 1* at 8 (emphasis added). The second affidavit reiterates that same scenario, only in more vague terms: "[D]uring jury selection . . . when we overheard various discussions among jurors . . . some of the comments were, 'I will convict him for sure.' 'If I was an obese drug dealer like he is I would shoot myself.' The jurors were laughing and carrying on saying, 'He is guilty and we will convict him.'" *Doc. 1* at 10.

The plain language of the first affidavit sets forth a clear time line of events and identify the prospective juror employed as a prison guard responsible for the alleged offensive comments. After the comments were made and drawn to Mr. Esparza's attention, he assured Petitioner's sister that he would take care of the matter. After further proceedings in the courtroom, that prospective juror was not selected for the jury.

The *voir dire* transcript that is not available to the public fully supports the conclusion that Mr. Esparza took action after being notified of the comments.  Mr. Esparza used a peremptory challenge to strike the prison guard.  Moreover, he did not have to use his last challenge to do so – after he struck the prison guard, he had one peremptory challenge remaining.  *See id.* at 19, 66.  Having dealt with the situation by keeping the prison guard off of the jury, this Court cannot find that trial counsel's conduct was deficient or that trial counsel's failure to challenge the entire panel resulted in prejudice.

First, there can be no prejudice if the juror who made a comment that connotes bias was not selected for the petit jury.  *See, e.g., Skilling v. United States*, ___ U.S. ___, ___, 130 S. Ct. 2896, 2920 at n.24 (2010) ("Statements by nonjurors do not themselves call into question the adequacy of the jury-selection process; elimination of these venire members is indeed one indicator that the process fulfilled its function."); *Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1514 (10th Cir. 1997) ("even if the denial of the for-cause challenge was error, it was harmless because Perez was removed by a peremptory challenge.").

As for the unidentified prospective jurors who overheard the guard's comments, there is no showing that any of them were selected for the jury.  When post-trial counsel filed the above affidavits in support of a motion for a new trial on December 14, 2007, he candidly admitted that he "cannot state with certainty whether any of these potential jurors ***who made and/or heard the prejudicial and improper comments*** actually served on the jury in this case." *United States v. Flores*, CR 07-545 WJ (Doc. 74 at 2, n.1).  Moreover, there is no showing that those who overheard the comments were influenced by her statements.  To the contrary, the affidavits state that in response to the guard's comments, those who overheard laughed.  Thus, it is far from clear that anyone took those comments seriously.

At the first sentencing hearing a few days later, post-trial counsel admitted that he had not reviewed the *voir dire* transcript prior to filing the motion for a new trial. *First Sentencing Hearing* at 6. After the United States filed its response to the motion and the *voir dire* transcript was prepared, the Clerk's Status Conference minutes reflect that when Judge Johnson asked if there would be any more argument on the motion for a new trial, post-trial counsel stated that "no additional argument need and US's Response is on point on the matter." *Doc. 84* at 1. Thereafter, Judge Johnson held his hearing, where the parties had no other arguments to make, and made his ruling after making the observation quoted earlier that there was no showing of prejudice. *New Trial Hearing* at 3, 7.

When the vague affidavit is read in conjunction with the more detailed one and counsel's concession, I think it is clear that the only potential juror making the comments was the prison guard who was not selected for jury service, and that, at best, other prospective jurors in the group around the prison guard who overheard the comments laughed. Admittedly, the record does not reflect whether trial counsel or post-trial counsel attempted to interview any prospective juror to see if they were in this crowd. I find that immaterial.

*Strickland* and the recent decision in *Harrington* make it plain that the Sixth Amendment does not require attorneys to be prepared for every conceivable turn a case may take or "guarantee perfect representation." *E.g., Harrington*, 131 S. Ct. at 791 (and cases cited therein). Competent attorneys can make reasonable conclusions to not forge ahead with a particular course of action. *Id.* at 789-91 (same). And, consistent with the constitution, attorneys "can avoid activities that appear 'distractive from more important duties,'" *id.* (quoting *Bobby v. Van Hook*, 558 U.S. ___, ___, 130 S. Ct. 13, 19 (2009) (per curiam)), or "formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics

and strategies," *id.* (internal citations to four Supreme Court cases omitted); and "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," *Strickland*, 466 U.S. at 690-91.

That is precisely the situation that trial counsel faced when confronted in the hallway by Petitioner's sister. To have succeeded on a motion to strike the venire panel, trial counsel would have had to stop the jury selection proceedings, which were all but concluded, and individually *voir dire* every panel member to see if they heard the offending remarks and whether that changed any of the responses previously given to the Court and attorneys. The attorneys knew who had been challenged for cause and had not yet exercised their peremptory challenges so pursuing a strategy of trying to strike the entire venire panel and rescheduling trial would have been an overblown and unnecessary response to the situation. Nor would the mere suggestion of the conduct that allegedly occurred have guaranteed a hearing at that point to strike the panel. That unidentified prospective jurors overheard the offending remarks is, at best, only a "thin allegation" of jury misconduct. *See United States v. Brooks*, 569 F.3d 1284, 1288 (10th Cir.), *cert. denied*, 130 S. Ct. 234 (2009). "A hearing is not required when it would not be useful or necessary in determining whether a defendant's rights were violated." *Id.* (internal quotation and citation omitted).

Finally, after learning of the alleged comments, exercising the defense challenges for causes and peremptory challenges, and eliminating the juror who made the offending remarks from the petit jury, trial counsel stated for the record that he had no objection to the jury selection procedures. *See Voir Dire Transcript* at 68 ("Does the defense have any objection you wish to raise concerning the manner in which this jury was selected? MR. ESPARZA: No,

-17-

Judge."). This reflects a reasonable strategic choice to forego raising any objection based on what Petitioner's sister had reported, and should not be second-guessed here.

The same is true for post-trial counsel. Though the record does not reflect whether post-trial counsel consulted the *voir dire* transcript or conducted juror interviews, it is probably no coincidence that his concession that the United States Attorney was correct and no further argument was necessary came after the *voir dire* transcript was prepared. To have succeeded on a motion for a new trial, post-trial counsel would have had the burden of showing that a ***petit juror*** either should have been challenged for cause, or was actually or impliedly biased. *E.g., Brooks*, 569 F.3d at 1288-89. I note that, of the thirteen jurors selected for the petit jury, ***not one of them*** was a prospective juror who expressed any sort of bias, any ties to the parties or witnesses or law enforcement, any strong feelings about the subject of the case, personal and professional hardships, or otherwise answered Judge Johnson's and counsels' questions. *Compare Voir Dire Transcript* at 10, 11, 13, 14, 15, 1, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28, 30, 34, 35, 36, 37, 38, 40, 41, 44, 3, 48, 50 (prospective jurors who answered questions), *with id.* at 69 (prospective jurors selected for the petit jury).

Thus, I find that trial counsel and post-trial counsel's decisions in not pursuing the matter further than they did was reasonable under the circumstances and that there is no reasonable probability Petitioner was denied a fair trial as a result of their strategic decisions.

### Ground 3 – Unspecified Instances Of "Cumulative" Ineffective Assistance

Having addressed all of the ineffectiveness claims raised and suggested by the 2255 petition and finding them lacking merit, I further find without merit claim three's conclusory assertion that an unspecified "multiplicity" of attorney errors "in combination" constitutes

ineffective assistance of counsel. *E.g., Herron*, 371 Fed. App'x at 917 ("To the extent Herron argues cumulative error, this argument fails for the same reason: None of his claims of error have merit.") (citing *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir.), *cert. denied*, 541 U.S. 1067 (2003)); *United States v. Burkley*, 370 Fed. App'x 899, 900 (10th Cir. 2010) ("In the absence of any error, a cumulative error analysis is not warranted.") (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (1990) (en banc)); *United States v. Crawford*, 1998 WL 105934 at *1 (10th Cir. 1998) ("Crawford's petition, judged charitably, contains nothing more than vague and conclusory allegations of ineffectiveness. It clearly fails to allege any concrete prejudice flowing from the actions of her trial counsel as required under *Strickland*").

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2255 petition be dismissed.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE